YEGEN, APPELLANT, v. BOARD OF COUNTY COMMIS-
SIONERS OF YELLOWSTONE COUNTY ET AL., RE-
SPONDENTS.

(No. 2,274.)

(Submitted March 2, 1906.  Decided March 26, 1906.)

*County   Commissioners — Powers — Statutes — Constitution —
County Boards of Health.*

County Commissioners—Powers—Erection of Detention Hospital.
  1.  A statute which empowers the board of county commissioners to erect a detention hospital, but fails to authorize it in express terms to acquire a site for such building, impliedly grants such power, since every power necessary for the execution of a power expressly granted is implied.

Constitution—Statutes—Title—State and County Boards of Health.
   2.   Sections 11, 25 and 26 of House Bill No. 104 (Laws 1901, p. 80), the purpose of which Act, as expressed in the title, was to form a state board of health, define its powers and duties and provide for the compensation of its officers and for the enforcement of its rules, while the body of the statute, among other things, confers upon county boards of health power to declare quarantine against contagious diseases and confine persons affected with such diseases in suitable detention hospitals, power for the erection of which is also granted, are unconstitutional as in contravention of Article V, section 23, of the Constitution, which declares that no bill shall be passed by the legislature containing more than one subject, which shall be clearly expressed in its title.

Statutory Construction—Legislature—Review.
   3.   In construing legislation the supreme court will not inquire whether it is good or bad, moral or immoral in its tendencies, the legislature being the exclusive judge, within the limitations of the Constitution, as to the advisability of enacting a particular bill into law, and its judgment and discretion in the performance of its duties may not be reviewed by the courts.

Statutory Construction—Implied Repeal.
   4.   Where a former Act upon a certain subject is not referred to in a subsequent statute, although the provisions of the first are substantially embodied in the later one, it will be held that it was not the purpose of the legislature to repeal it or set it aside.

County Commissioners—Powers—Detention Hospitals—Statutes.
   5.   Under Political Code, section 4230, the board of county commissioners has not the power to erect and maintain a detention hospital, for persons affected with contagious or pestilential diseases, at the expense of the county, subsection 7 thereof, which confers authority to provide ''necessary county buildings,'' referring simply to such buildings as may be required for ordinary county purposes, and subsection 9, under which a hospital may be constructed, having reference to a hospital for the indigent sick.

County Boards of Health—Powers—Real Estate—Purchase.
   6.   The power given to the county board of health, consisting of the county commissioners and one physician, under Political Code, section 2864, to pay out of the general fund of the county the necessary expenses attendant upon the enforcement of the chapter relating to such boards of health, does not include authority to the board of county commissioners to acquire land on their own motion and to erect buildings thereon.

County Commissioners—County Boards of Health—Status.
   7.   The board of county commissioners and the county board of health, consisting of the commissioners and one physician (Political Code, sec. 2860), are two bodies with distinct and separate powers.

*Appeal from District Court, Yellowstone County; C. H. Loud, Judge.*

Action by Christian Yegen against the board of county commissioners of Yellowstone county and others. From an order refusing a temporary injunction, plaintiff appeals. Reversed.

*Mr. Fred H. Hathhorn,* and *Mr. Harry A. Groves,* for Appellant.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Appeal from an order refusing to issue an injunction. It appears from the complaint on file herein that the board of county commissioners of Yellowstone county, having concluded to establish a county detention hospital, opened negotiations with the Minnesota-Montana Land and Improvement Company, a corporation, to purchase from it a certain block in the city of Billings on which to erect a suitable hospital building. The negotiations had progressed so far that upon proper application the district judge of the district of which that county is a part had appointed appraisers to fix the price, and this had been done. Thereupon the plaintiff brought this action as a taxpayer to enjoin the board from proceeding further in the matter, on the ground that the board has no power to purchase property for such a purpose or to establish such a hospital. An order to show cause was issued, fixing the hearing for November 18, 1905, at chambers, at Miles City. The defendant board showed cause by demurrer, on the ground that the complaint does not state a cause of action, and moved the judge to deny the injunction. After argument, this motion was sustained. Thereupon the plaintiff appealed.

The sole question presented is, whether the board has power, under the Act of 1901 (Laws of 1901, p. 80), to purchase a site and erect a detention hospital at the expense of the county, or, in case that statute is invalid, whether the statute defining the general powers of boards of county commissioners confers the power. The Act referred to is entitled, "An Act creating a state board of health, defining its powers and duties and providing for the compensation of its officers, and providing for

the enforcement of the rules and regulations of said board."
Section 1 creates the state board of health. Sections 2, 3, 4,
5, 6, and 8 define its powers and duties and fix the compensa-
tion of its secretary. Section 7 provides for the compensation
and expenses of its members. Sections 2, 3, 4, and 8 also pro-
vide for the organization and meetings of the board, the organi-
zation of local boards in the cities and villages of the state,
the adoption of rules and regulations and the means of enforc-
ing them, the payment of expenses in the emergencies of exist-
ing or threatened epidemic or pestilential diseases in particular
localities, and for public conferences of local health officers
appointed by the board. Sections 9 to 35 create county boards
of health consisting of the members of the boards of commission-
ers of the respective counties and one physician selected by them,
define their powers and duties, provide for local health officers,
define their powers and duties, and deal with certain miscel-
laneous matters concerning the public health in general. Sec-
tions 11, 25, and 26 are as follows:

"Section 11. The board of health of any county may de-
clare quarantine therein, or in any part thereof, against con-
tagious or infectious diseases prevailing in any other place,
and against all persons and things likely to spread contagion
or infection. The board has power and authority to enforce
such quarantine until the same is raised by it, and may con-
fine any person affected with or likely to spread contagious or
infectious diseases in a suitable detention hospital prepared
and used for that purpose, or if no such place is prepared by
the county, then such persons shall be quarantined in his or
her home or abode."

"Section 25. The municipal or county authorities may
provide for the use of the city, town or county, hospitals or
temporary places for the reception of the sick; and for that
purpose may themselves build such hospitals or places of re-
ception, or enter into an agreement with any person having
the management of any hospital for the reception of the sick
inhabitants of their city, town or county, on payment of such

sums as may be agreea upon; or two or more local authorities may combine in prov:ding a common hospital.

"Section 26.   Any ᴗxpenses incurred by the authorities of any city, town or county in maintaining a hospital or a temporary place for the reception of a patient shall be paid from the general fund of the city or county."

While these sections do not in express terms empower the boards of commissioners to acquire sites for the erection of detention hospitals for their respective counties, they do confer the power to build them, and, by the well-settled rule that every power necessary to execute the power expressly granted is necessarily implied, the power to acquire by purchase or otherwise suitable sites for these hospitals is necessarily implied; for it would be idle to say that the boards have power to erect suitable buildings for the expressed purpose, and then say that they have no power to proceed because there is no express grant of power to purchase suitable sites for them.   So that whether any power in the premises has been effectively granted depends upon aᴖ answer to the further inquiry, whether the legislation is invalid because it was not enacted in conformity with section 23, Article V, of the Constitution, as appellant contends.   This section declares: "No bill except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject which shall be clearly expressed in its title; but if any subject shall be embraced in any Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed."

The particular criticism of the Act is that the title of it does not express the subject of the legislation.   The reasons for the enactment of this constitutional provision are stated by this court in *State* v. *Mitchell*, 17 Mont. 67, 42 Pac. 100, and in *State* v. *Anaconda Copper Min. Co.*, 23 Mont. 498, 59 Pac. 854.   In the latter case they are summarized as follows: "To restrict the legislature to the enactment of laws the objects of which legislators and the public as well may be advised of, to the end that any who are interested, whether as representatives or those

represented, may be intelligently watchful of the course of the pending bill. The limitation is likewise designed to prevent legislators and the people from being misled by false or deceptive titles, and to guard against fraud in legislation by way of incorporating into a law provisions concerning which neither legislators nor the public have had any intimation through the title read or published.'' This summary is in substance the same as that laid down by Judge Cooley in his work on Constitutional Limitations (seventh edition), page 205, and by Sutherland in his work on Statutory Construction (section 78).

It is said in *State* v. *McKinney*, 29 Mont. 375, 74 Pac. 1095: ''The title is generally sufficient if the body of the Act treats only, directly or indirectly, of the subjects mentioned in the title, and of other subjects germane thereto, or of matters in furtherance of or necessary to accomplish the general objects of the bill, as mentioned in the title. The title need not contain a complete list of all matters covered by the Act.''

It was also said in *State* v. *Anaconda Copper Min. Co.*: ''But by this constitutional notice it is only intended that the subject of the bill shall be fairly expressed in the title. It is not necessary—for the Constitution has not so declared—that a title shall embody the exact limitations or qualifications contained in the bill itself which are germane to the purpose of the legislature, if the general subject of the measure is clearly expressed in the title. Jpon the highest authority it is held that under constitutional provisions substantially like that referred to in Montana, where the degree of particularity necessary to be expressed in the title of a bill is not indicated by the Constitution itself, the courts ought not to 'embarrass legislation by technical interpretations based upon mere form of phraseology. The objections should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or, if but one object, that it was not sufficiently expressed by the title.' ''

So long as the particular legislation in question is not repugnant to some provision of the fundamental law of the state,

this court may not proceed to inquire and determine whether it is good or bad, or moral or immoral in its tendencies. It may be vicious in its tendencies, yet this fact of itself is of no moment. Within the limitations of the Constitution the legislature is the exclusive judge as to whether a particular bill should be enacted into law, and its judgment and discretion in the performance of its duties may not be reviewed by the courts. It is, then, the imperative duty of the courts to sustain its action in all cases except when it is clearly repugnant to the fundamental law.

What is the underlying object of this legislation? As indicated by its title, it is not an Act dealing generally with the whole subject of the public health, but one that deals only with the establishment of the state board of health and subjects germane thereto. And it must not be overlooked that at the time of its passage there had already been created by law county boards of health, with a clear definition of their powers and duties (Political Code, secs. 2860-2864) ; and inasmuch as this legislation is not referred to in the Act, though its provisions are substantially embodied therein, we are justified in concluding that it was not the purpose of the legislature to repeal it or set it aside. If the Act had been entitled "An Act to Protect the Public Health," then it might have included local and county boards as subsidiary instrumentalities to accomplish the general purpose so declared (*State* v. *McKinney, supra*) ; but, in view of the law as it already existed and the purpose of the Act as indicated by its title, the object sought was restricted to the formation of a state board and a definition of its powers.

It seems that no one would conclude from a reading of its title that the Act had concealed in its bosom a provision creating county boards of health and others touching the duties of county officers, and the enlargement of the powers given them for the conduct of the ordinary affairs of the county. No one would have understood, for instance, that one purpose was to give more extensive powers to boards of county commissioners to expend the funds of the county to acquire property for pur-

poses for which they could not theretofore acquire it, and that the burdens of the taxpayers would be in consequence thereof increased. Indeed, the sections of the Political Code cited are copied substantially into the Act; but the county boards of health already created by this independent and already existing legislation are nowhere by appropriate language made subordinate means or instrumentalities to accomplish the purposes of the state board. They are continued as independent local bodies with well-defined powers, which they may exercise under such rules and regulations as they may adopt, even though inconsistent with those of the state board, and they owe no duty to the state board except that their respective secretaries must report to it certain information at stated times, but for a neglect of which there seems to be no penalty provided.

But, besides this anomalous condition, there are in the Act sections 25 and 26, quoted, which not only enlarge somewhat the powers of county boards of health to incur expense, but also add to those of the boards of commissioners of the respective counties the power to expend money for purposes for which, as we shall see, there is no warrant of law under the general powers conferred upon that body under section 4230 of the Political Code. If the legislature had enacted a portion of the Act, viz., sections 9, 10, 11, 12, 13, 25, and 26, under the title "An Act to create Boards of Health for the respective Counties in the State, and define their Powers," it would have had a law complete in itself and not open perhaps to any constitutional objection. This feature of the Act makes it clearly open to the objection urged against it, and the result is that section 25 must be declared invalid. In so far as this section of the Act is concerned, it is not effective to give the defendant board of commissioners the power under which it was proceeding. Nor, for the same reason, are either of the others.

Nor do we think that under their general powers, as defined in section 4230 of the Political Code, supra, the boards of commissioners have power to build and maintain detention hospitals for contagious or pestilential diseases at the expense of their counties. It is therein declared (subdivision 5) that these

boards have power to provide for the care and maintenance of indigent sick and otherwise dependent poor, and that they may erect and maintain hospitals for that purpose.   However desirable it may be that they should have the power to provide separate hospitals for able-bodied and not dependent persons suffering from contagious or pestilential diseases, they are not here empowered to erect and maintain them at the expense of the taxpayer.   So they may, under subdivision 6, acquire farms for the support of the dependent poor—not others.   So, again, they have the power to provide necessary county buildings under subdivision 7.   But what are necessary county buildings?   Manifestly such as are required for ordinary county purposes, as is indicated in these and similar provisions, as, for instance, in subdivision 9.   Under this latter provision they may cause to be erected a courthouse, jail, hospital and such other buildings as may be necessary.   The word "hospital" evidently does not mean one or more hospitals for all classes of persons; but for that class of persons for whom the board may provide at the expense of the people, namely, the indigent sick. The phrase "such other public buildings as may be necessary" has no wider meaning, nor does it enlarge the class of purposes for which these boards may erect and maintain buildings so as to include others not of the class already mentioned.

The extent of the powers of boards of county commissioners in the state of Montana, to care for the dependent poor, whether sick or well, under provisions of statutes similar to those referred to, are discussed in *Lebcher* v. *County Commissioners of Custer County*, 9 Mont. 315, 23 Pac. 713, and we think the conclusion of the court there stated the correct one.   That decision is conclusive of this branch of the case.

If, under the law as it stood at the time of the passage of the Act in question, the necessity arose for a place for temporary detention of persons suffering from contagious and infectious diseases, the county boards of health had power to make provision therefor at the expense of their respective counties (Political Code, sec. 2864); but the power thus given to these boards is not a power given to the boards of county commissioners to ac-

quire land on their own motion and to erect permanent build-
ings thereon. It must not be overlooked that the two boards,
though closely associated, have distinct and separate powers,
and the two must not be confounded, as the attorney general
seems to have done in his argument in support of the order of
the district court refusing to issue the injunction; for he in-
sisted that the power conferred upon boards of health under
section 2864 of the Political Code is an authority conferred upon
the boards of county commissioners as such, by which they might
purchase sites and erect detention hospitals.

The result is that the order of the district court is erroneous,
and must be reversed.

*Reversed.*

Mr. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.