JOHNSON ET AL., APPELLANTS, *v.* MEAGHER COUNTY ET AL., RESPONDENTS.

(No. 8487.)

(Submitted January 18, 1945.   Decided February 5, 1945.)

[155 Pac. (2d) 750.]

Mr. *George Niewoehner*, for Appellants, submitted an original and a reply brief, and argued the cause orally.

*Mr. R. V. Bottomly*, Attorney General, *Mr. I. W. Choate*, Tax Counsel for the State Board of Equalization, and *J. H. Higgins*, County Attorney for Meagher County, for Respondents, submitted a brief; *Mr. Choate* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought to recover taxes imposed and collected for the year 1939 upon the shares of stock of the plaintiff national bank owned by the individual plaintiffs. The complaint alleges in substance that the tax was erroneous and unlawful and that plaintiffs had, in addition to the share tax, paid an

income tax on the basis of the dividends received from the shares. A general demurrer to the complaint was sustained. Judgment was entered for defendants and plaintiffs have appealed from the judgment.

The only question presented is whether our income tax law (Chapter 181, Laws 1933, now sections 2295.1 et seq., Revised Codes), as it might be affected by section 5219, U. S. R. S., 12 U. S. C. A. section 548, has repealed or amended the statutes relating to the *ad valorem* tax on the shares of stock in a national bank.

Shares of stock are property and as such are taxable. (Sec. 17, Art. XII, of the Montana Constitution.) Shares of a national bank, however, are taxable only as Congress permits. (*State* v. *Mady*, 83 Mont. 418, 272 Pac. 691; *Montana Nat'l. Bank of Billings* v. *Yellowstone County*, 78 Mont. 62, 252 Pac. 876.) Congress as early as 1864, by section 5219, U. S. Revised Statutes, authorized the states to tax the shares of stock of national banks. In 1923 the statute was amended authorizing the taxation of national banks in any one of three different methods, including the one of taxing the dividends received as income as well as a share tax. In 1926 the Act was further amended to its present form, and so far as applicable to the point under consideration here reads:

"The legislature of each State may determine and direct, subject to the provisions of this section, the manner and place of taxing all the shares of national banking associations located within its limits. The several States may (1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:

"1. (a) The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause." (Title 12, U. S. C. A. sec. 548.)

Montana has since 1887 imposed a property tax (sec. 1997,

■ Revised Codes) applicable to all property, save that expressly exempted and national bank shares were not exempted. Sections 2064 to 2066 provided the procedure to be followed in imposing and collecting the tax on national bank shares. The tax in question here, as above stated, was the *ad valorem* tax on the shares of stock.

Plaintiffs contend that Montana adopted the second method of taxing national banks permitted by section 5219, as amended, when it passed our Income Tax Law (Chapter 181, Laws 1933), now sections 2295.1 et seq., Revised Codes. Chapter 181, as amended by Chapter 28, Laws 1937, and Chapter 7, Laws 1939, provides for an income tax based upon income derived from any source whatever. On its face it is sufficiently broad to include income as dividends on the shares of stock of a national bank. Defendants contend, however, that because of that part of section 31 of Chapter 181 reading: "And all income, except what has been expressly exempted under the provisions of this Act and income not permitted to be taxed under the Constitution of this state or the Constitution or laws of the United States, shall be included and considered in determining the net income of taxpayers within the provision of this Act", such dividends are excepted from the income tax.

Since section 5219, as it stood when Chapter 181 was passed, permitted the taxation of such income providing no *ad valorem* tax was imposed, that particular contention cannot be sustained, but we reach the same result for a different reason. The determinative question before us is this: Did the legislature by Chapter 181 intend to change its method of taxing national banks? Did it intend to abandon the *ad valorem* tax on bank shares and substitute therefor a tax on the dividends as income?

It is noteworthy that Chapter 181 contains no repealing clause of any kind; it does not purport on its face to be a replacement tax in any respect; it does not substitute an income tax for a property tax as to any property, unless it be the shares of stock of national banks because of section 5219. As to other classes of property the *ad valorem* tax still remains and the owners

thereof must, in addition thereto, pay a tax upon the income therefrom.

All this is persuasive that the legislature intended no change in the method of taxing national banks. But counsel for plaintiffs contends that under familiar rules of construction the latest enactment of the legislature controls and necessarily amends prior Acts. On their face, however, there is no conflict between the two Acts. The conflict arises because of section 5219 compelling a choice between the several methods of taxing a national bank and the prohibition against the use of more than one method. We believe the legislature did not intend by Chapter 181 to change its method of taxing national banks when it is remembered, as above pointed out, that the *ad valorem* tax on all other property was unchanged. The cases of *Mississippi State Tax Comm.* v. *Brown*, 188 Miss. 483, 193 So. 794, 195 So. 465, 127 A. L. R. 919, 933, *First Nat'l. Bank* v. *Buder*, D. C., 8 Fed. (2d) 883, and *Buder* v. *First Nat. Bank*, 8 Cir., 16 Fed. (2d) 990, have been called to our attention. Because of the different fact conditions, the *Buder Case* is of no particular help here. The *Brown Case* is not a strong precedent because the decision was by an evenly divided court. We hold that the only choice which has been made by the Montana legislature under section 5219 is that imposing the *ad valorem* tax on the shares of stock of a national bank.

Were we to hold otherwise, then we would be obliged to say that Chapter 181 so far as it has application to income as dividends from national bank shares, is unconstitutional and void as being in conflict with section 23 of Article V of our Constitution, and plaintiffs' position would be no better. That section in part provides: "No bill, * * * shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be so expressed." The title to Chapter 181 reads: "An Act Providing for the Levy and Collection of an Income Tax; Providing for Exemptions and

Fixing Basis and Rate of Tax; Prescribing the Duties and Powers of the State Board of Equalization in its Administration; Providing Procedure and Machinery for Administration Thereof; Fixing the Jurisdiction of the Courts in Connection with Review and Appeal under this Act; Providing Penalties for Violations Hereof and Making Appropriations to Carry Out its Purposes." There is nothing in the title to Chapter 181, nor indeed in the body of the Act, that suggests in any way that the legislature contemplated making a new choice in the method of taxing national banks under the permission granted by section 5219, Revised Statutes as it then stood. There is nothing in the title of Chapter 181 to suggest a replacement of the *ad valorem* tax on national bank shares. There is nothing in the title to Chapter 181 that suggests a purpose on the part of the legislature to give owners of national bank shares the favorable consideration contended for by plaintiffs, as compared with the owners of all other classes of property.

What were the purposes of section 23 of Article V of the ▮ Constitution? "Stated briefly, those purposes are to restrict the Legislature to the enactment of laws the subjects of which are made known to the lawmakers and to the public, to the end that any one interested may follow intelligently the course of pending bills to prevent the legislators and the people generally being misled by false or deceptive titles, and to guard against the fraud which might result from incorporating in the body of a bill provisions foreign to its general purpose and concerning which no information is given by the title." (Citing cases.) (*State ex rel. Foot* v. *Burr*, 3 Mont. 586, 238 Pac. 585.)

To construe Chapter 181 in accordance with plaintiffs' contention would render it more objectionable under this section of the Constitution than the Act condemned in the *Burr Case*. On the authority of that case, the statute (Chapter 181) if construed as plaintiffs contend would have to be condemned.

The judgment of the trial court was correct and it is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ADAIR and CHEADLE concur.

Rehearing denied February 15, 1945.

Petition to the Supreme Court of the United States for writ of certiorari to review the above decision denied October 8, 1945.