CITY OF HELENA, Montana, a municipal corporation, and ED PORTER, a police officer, thereof, Plaintiffs and Respondents, v. E.V. SONNY OMHOLT, Ex Officio Commissioner of Insurance and Ex Officio Investment Commissioner of the State of Montana, Defendant and Appellant.

No. 11732.
Submitted April 6, 1970.
Decided May 1, 1970.
468 P.2d 764.

Robert M. Woodahl, Atty. Gen., Helena, Michael Greely, Spec. Asst. Atty. Gen., Great Falls, for appellant.

C. W. Leaphart, Jr., City Atty., R. Keith Keller, argued, Helena, for respondents.

William Conklin, argued, Great Falls, Fred C. Root, City Atty., Missoula, C. J. Harrington, City Atty., Butte, amicus curiae.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This action by the city of Helena and one of its police officers seeks a declaratory judgment against the state auditor prohibiting him from distributing monies appropriated by the 1967 state legislature in aid of city police reserve funds established under the Metropolitan Police Law. The district court of Lewis and Clark county entered judgment prohibiting distribution of any portion of the appropriated funds to any city not complying with the eligibility requirements contained in the appropriation bill, House Bill No. 557, specifically to those cities not withholding 5% of the salary of each active policeman unless such city had a designated minimum balance in its police reserve fund. From this judgment, the state auditor appeals.

The underlying question upon appeal is whether the restrictions on distribution of the appropriated funds contained in Section 2 of the appropriation bill, House Bill No. 557, are valid and controlling.

This case involves no factual dispute, but turns solely upon

the meaning and legal effect of various statutes and appropriation bills enacted by the state legislature. This pertinent legislation is the starting point of our inquiry.

Section 11-1825, R.C.M.1947, which has existed in its present form since 1953, provides for deduction by the city of "three per centum (3%) of the monthly compensation paid each officer for his services" to be deposited in the police reserve fund. The police reserve fund is a fund established for payment of benefits under the police retirement system of cities operating under the Metropolitan Police Law, sections 11-1801 through 11-1837, R.C.M.1947. The monies contained in the police reserve fund are derived from (1) a mandatory 3% deduction from the salaries of active police officers under section 11-1825, (2) a permissive city mill levy not exceeding 3 mills, and (3) state funds derived from the premium tax collected on motor vehicle insurance sold in this state.

Section 11-1834 requires the state auditor, at the end of each fiscal year, to pay to each city having a police department operating under the Metropolitan Police Law certain sums for its police reserve fund based upon a formula applicable to city fire departments contained in section 11-1919, R.C.M.1947. There is no dispute in this case concerning the amount payable to any city under this formula.

House Bill No. 557, an appropriation bill enacted by the 1967 state legislature and approved by the governor on March 2, 1967, contained two sections. Section 1 appropriated to the state auditor from the police account of the earmarked revenue fund as much money as was necessary to comply with section 11-1834, heretofore referred to. Section 2 placed certain eligibility requirements and restrictions on disbursement of the appropriated funds to cities in the following language:

"Section 2. The state auditor shall not distribute any of the moneys hereby appropriated to any city or town, having a police retirement system established under the provisions of the Metropolitan Police Law, which is not levying at least a portion

of the maximum levy required by law for the fund for the payment of salaries of police officers on the reserve list; provided, however, that this restriction shall not apply to such cities or towns which have on deposit in said fund for payment of salaries of reserve police officers an amount of money equal to the product of seven thousand dollars ($7,000) multiplied by the number of active members of the police department of such city or town. *Nor shall the state auditor distribute any of the moneys hereby appropriated to any city or town, having a police retirement system established under the provisions of the Metropolitan Police Law, which is not collecting five percent (5%) of the monthly wage from each active member of its police department,* unless such city or town has on deposit an amount of money equal to the product of seven thousand dollars ($7,000) multiplied by the number of active members of the police department of such city or town.'' (Emphasis added).

The foregoing italicized restriction is the one involved in the instant case, there being no evidence that the city of Helena or any other city (1) has not levied at least a portion of the permissive tax levy, or (2) has on deposit an amount equaling the product of $7,000 multiplied by the total number of active members of its police department.

Thereafter the 1967 state legislature went into extraordinary session at the call of the governor, enacting Extraordinary Session House Bill No. 6, which was approved by the governor on March 20, 1967. Section 8 thereof provided in pertinent part as follows:

''Section 8. The following monies are appropriated for the biennium ending June 30, 1969:

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*

''STATE AUDITOR

\*        \*        \*        \*        \*        \*        \*        \*        \*        \*

'' (3) From the Earmarked Revenue Fund, Policeman's and Fireman's Disability Account, for the distribution of the police-

man's and fireman's disability money as provided in sections 11-1834 and 11-1919, R.C.M.1947, an appropriation sufficient to meet the requirements as provided by law.''

This appropriation bill contained no eligibility requirements or restrictions on disbursements of the monies appropriated.

In May 1968, the city of Helena and one of its police officers filed a complaint in the district court of Lewis and Clark county seeking declaratory relief determining the proper construction and validity of various enactments of the state legislature heretofore referred to. Specifically, plaintiffs sought judgment prohibiting the state auditor from distributing the appropriation for police reserve funds to any city having a police retirement system established under the provisions of the Metropolitan Police Law which is not collecting 5% of the monthly wage of each active member of its police department for deposit in the police officer's reserve fund as required by House Bill No. 557.

Speaking in general terms, defendant's answer amounted to an admission of the facts contained in the complaint coupled with a denial of the legal conclusions drawn by plaintiffs from those facts. The case was ultimately submitted to the district court for decision on the basis of an agreed statement of facts.

Basically the agreed facts indicate: That the city of Helena has been withholding 5% of each police officer's monthly salary and depositing it in the police officer's reserve fund since July 1, 1967, pursuant to House Bill No. 557. That under sections 11-1834 and 11-1919, the state auditor is *required* to pay the treasurer of each city or town having a police department an amount equal to 10% of the total compensation paid by each city or town to its policemen for their services during the previous year. That House Bill No. 557 does not allow the state auditor to distribute any of the monies for the police account to any city or town which is not collecting the 5% withholding from the monthly wage of each active policeman (subject to an exception not pertinent here). That section 11-1825, R.C.M. 1947, requires cities to retain 3% of each active policeman's

monthly compensation for the police officer's reserve fund. That section 11-1825 and House Bill No. 557 appear to be in conflict requiring an interpretation before any appropriated funds can be disbursed. Finally, that Ed Porter, the other plaintiff, is an active police officer of the city of Helena whose take home pay is being reduced an additional 2%, pursuant to House Bill No. 557, over that required by section 11-1825.

On June 18, 1969, the district court entered its findings of fact, conclusions of law, and judgment. Its findings of fact consisted of the statement of facts agreed to by all parties. Its conclusions of law were that this was a proper case for declaratory relief; that House Bill No. 557 was a special law enacted later than the general law contained in section 11-1834 and therefore amended the latter by implication; that the state auditor is prohibited from disbursing the appropriated funds to cities not withholding 5% of the monthly compensation of its active police officers (subject to the minimum balance exception not pertinent to the instant case) ; and, that the city of Helena has been and now is withholding the required 5%. Judgment was entered (1) for plaintiffs with each party bearing their own costs, (2) prohibiting the state auditor from disbursing funds appropriated for the biennium ending June 30, 1969 to cities not complying with the requirements of House Bill No. 557, and (3) directing the state auditor to disburse to the city of Helena and any other city complying with the requirements contained in House Bill No. 557 their proportionate share of the appropriated funds. The instant appeal is from this judgment.

Since twelve Montana cities have not received distribution of the appropriated funds for the biennium ending June 30, 1969, leave was granted them to file amicus curiae briefs herein. The cities of Great Falls, Butte, and Missoula responded with briefs supporting the position of defendant state auditor and requesting that the judgment of the district court be reversed. Additionally, the city attorney of Great Falls orally argued that position.

The gist of plaintiffs' argument is that the provisions of section 11-1825 and House Bill No. 557 are repugnant and irreconcilable; that under such circumstances the later specific appropriation bill, House Bill No. 557, repeals the earlier general statute, section 11-1825, by implication; and that Extraordinary Session House Bill No. 6 is not inconsistent with House Bill No. 557 and does not repeal or amend it. Therefore, according to plaintiffs, the state auditor is prohibited from disbursing the appropriated funds to any city not withholding 5% of each active policeman's salary for the police reserve account.

The thrust of defendant's contention is that House Bill No. 557 and section 11-1825 are not irreconcilably repugnant, but on the contrary can be interpreted in pari materia giving effect to each by interpreting the 5% withholding provision of House Bill No. 557 to mean the 3% required under section 11-1825 plus 2% consisting of any other required withholding such as federal and state income taxes, social security deductions, and the like. Defendant argues that because the two are not repugnant, the later statute (House Bill No. 557) does not repeal the earlier (section 11-1825) by implication. Accordingly the money appropriated is subject to immediate disbursement which will strengthen the police reserve funds of the various cities, thus carrying out the intent of the legislature.

We need not discuss whether the provisions of the appropriation bill irreconcilably conflict with section 11-1825 and section 11-1834 and repeal the latter statutes by implication. In our view, Section 2 of the appropriation bill containing the limitations on disbursement of the appropriated funds is void and inoperative as contended by the city of Great Falls in its brief and oral argument.

We find that Section 2 of House Bill No. 557 is void and inoperative because the title of this appropriation bill does not express the purpose of Section 2. Thus it offends Art. V, Sec. 23 of the Montana Constitution.

"Sec. 23. No bill, except general appropriation bills, and bills

for the codification and general revision of the laws, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." Act. V, Sec. 23, Montana Constitution.

The title of the appropriation bill, House Bill No. 557, contains this language:

"An Act Appropriating Money to the State Auditor From the Police Account of the Earmarked Revenue Fund for the Biennium Ending June 30, 1969, for the Purposes Enumerated in Chapter 261, Laws of 1965; and Providing the Method of disbursement."

This title indicates that the purpose of the appropriation bill is to appropriate money to carry out the purposes enumerated in Chapter 261, Laws of 1965 (codified as sections 11-1834 through 11-1837, R.C.M.1947). The enumerated purposes of Chapter 261, Laws of 1965, are expressed in its title:

"An Act to Provide For Annual Payments From the Premium Tax Collected on Motor Vehicle Insurance to Every City or Town Having a Police Department; Providing How Such Payments Shall be Expended by The Cities or Towns."
The provision for annual payment to every city or town is mandatory. Section 1 of Chapter 261, Laws of 1965 (codified as section 11-1834), provides in pertinent part:

"At the end of each fiscal year the state auditor *shall issue and deliver* to the treasurer of each city and town in Montana, having a police department, *his warrant* in an amount * * * [determined by the formula used for fire departments]". (Emphasis added; bracketed material paraphrased.)

This mandatory annual payment of state funds to every city and town having a police department is not effectuated by Section 2 of House Bill No. 557. On the contrary, such purpose is defeated thereby. Section 2 prohibits disbursement of state funds appropriated to make these mandatory annual payments

to those cities and towns not meeting certain qualifications and requirements, principally those cities not making a mill levy for payment of reserve police officer's salaries and those cities not withholding 5% of the salaries of its active police officers.

In addition the title of House Bill No. 557 contains the concluding phrase "and Providing the Method of Disbursement". Nowhere in the body of the act is any mention made of any "Method of Disbursement", unless the prohibitions and restrictions on any disbursements to nonqualifying cities falls within the ambit of that term. We conclude that such interpretation requires an active and fertile imagination, and decline to so construe it.

For the foregoing reasons, House Bill No. 557 contains a false and deceptive title. Art. V, Sec. 23 of the Montana Constitution is designed to prevent legislators and the people from being misled by false or deceptive titles. This Court succinctly summarized this purpose in Johnson v. Meagher County, 116 Mont. 565, 570, 155 P.2d 750, 752:

"What were the purposes of section 23 of Article V of the Constitution? 'Stated briefly, those purposes are to restrict the Legislature to the enactment of laws the subjects of which are made known to lawmakers and to the public, to the end that any one interested may follow intelligently the course of pending bills to prevent the legislators and the people generally being misled by false or deceptive titles, and to guard against the fraud which might result from incorporating in the body of a bill provisions foreign to its general purpose and concerning which no information is given by the title.' (Citing cases.) (State ex rel. Foot v. Burr, 73 Mont. 586, 238 P. 585.)"
To like effect see Hale v. Belgrade Co., Ltd., 74 Mont. 308, 240 P. 371; State ex rel. Holliday v. O'Leary, 43 Mont. 157, 115 P. 204; Russell v. Chicago, B. & Q. Ry. Co., 37 Mont. 1, 94 P. 488, 501; Yegen v. Board of County Commissioners, 34 Mont. 79, 85 P. 740; State v. Brown, 29 Mont. 179, 74 P. 366. The test under this provision of the Montana Constitution is.

simply this—Is the title of legislation in question of such character as to mislead the public or members of the legislature as to the subjects embraced? State v. Driscoll, 101 Mont. 348, 54 P.2d 571; Arps v. State Highway Commission, 90 Mont. 152, 300 P. 549.

■ Where, as here, the title to the appropriation bill expresses an appropriation to carry out the provisions of a specific statutory law and then proceeds to nullify and defeat the mandatory and all-inclusive character of that specific statutory law without reference thereto in the title of the appropriation bill, we hold the latter to be deceptive and misleading in violation of the constitutional proscription. Accordingly we must strike down Section 2 of House Bill No. 557, leaving Section 1 containing the appropriation itself intact and operative as provided in Art. V, Sec. 23 of the Montana Constitution.

■ By way of further illustration, we find in Section 2 of House Bill No. 557 a device whereby the legislature can blunt the veto power granted the governor by the state constitution. The governor is granted line item veto power in appropriation bills by Art. VII, Sec. 13 of the Montana Constitution providing in pertinent parts as follows:

"The governor shall have power to disapprove of any item * * * of any bill making appropriations of money, embracing distinct items * * *".

But the veto power of the governor extends only to the entire item as passed by the legislature; he cannot veto part of the item and approve the remainder.

Here, he could not have vetoed Section 2 containing the prohibitions and restrictions on distribution of the appropriated funds and approved the appropriation itself, for to permit this would be to permit the governor to exercise creative legislative powers thereby usurping the function of the legislature and violating the constitutional principle of separation of powers. Here, the governor's only alternative to approving House Bill No. 557 in toto was to veto the appropriation necessary to comply with

the mandatory annual payments required by a specific state law, Section 11-1834.

This dilemma illustrates why appropriation bills should not be held to amend substantive statutes by implication. Even under the federal system where Congress, unlike our state legislature, has the unquestioned power to permanently change existing law in appropriation bills, such tactics are recognized as exceedingly bad legislative practice. Tayloe v. Kjaer, 84 U.S. App.D.C. 183, 171 F.2d 343.

The judgment of the district court is reversed, the state auditor is directed to distribute the funds appropriated in Section 1 of House Bill No. 557 in accordance with the provisions of section 11-1834, R.C.M.1947, and the excess 2% withheld from the salaries of active police officers is ordered refunded to them upon their request in conformity with our ruling herein.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, DALY and JOHN C. HARRISON concur.