CITY OF BILLINGS, A MUNICIPAL CORPORATION AND YELLOW-
STONE COUNTY, MONTANA, A BODY POLITIC, PLAINTIFFS, *v.* THE
HONORABLE SIDNEY T. SMITH, COMMISSIONER OF LABOR
OF THE STATE OF MONTANA, DEFENDANT.

No. 12100.
Decided October 29, 1971.
490 P.2d 221.

198

MR. JUSTICE HARRISON dissented in part and filed opinion.

Harold F. Hanser, County Atty., argued John R. Davidson, City Atty., argued Billings, Donald Ostrem, City Atty., argued, Great Falls, Perry Moore, argued, Harlowton, J. A. Alexander, Butte, C. W. Leaphart, Jr., Helena, Ralph T. Randono, appeared, Great Falls, for plaintiffs.

Robert L. Woodahl, Atty. Gen., Helena, Lawrence D. Huss and John P. Connor, Jr., Asst. Attys. Gen., argued, Helena, for defendant.

D. Patrick McKittrick, argued, John C. Hall, Great Falls, amicus curiae.

John Sheehy, intervenor argued, Billings, William N. Jensen, Deputy Dir. Montana Legal Services Ass'n, and Thomas Ashton, III appeared, Helena.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding seeking a declaratory judgment that House Bill No. 338, Chapter No. 417, Laws of 1971, called the Minimum Wage Act, is unconstitutional, or that certain persons are excluded from its provisions, or that in any event, certain persons can by contract waive the provisions of the Act. The City of Billings and the County of Yellowstone filed their petition, and this Court accepted original jurisdiction.

As a result of this Court's order accepting jurisdiction, other parties have been permitted to appear designated as amicus curiae or interveners. They include intervener, John H. Bangs; amicus curiae, Montana state Firemen's Association, Montana Legal Services Association, John C. Hall, City of Helena, City of Great Falls; and intervener, John C. Sheehy.

The City of Billings, the County of Yellowstone, the City of Helena, and the City of Great Falls will all be treated as plaintiffs. Sidney T. Smith is Commissioner of Labor of the State of Montana, represented by the Attorney General and will be called defendant. Unless otherwise indicated, the terms plaintiffs and defendant will include positions of interveners and amicus curiae.

Two general issues are presented by the petition seeking a declaratory judgment. One is an attack on constitutionality; the other seeks a determination of the legality of the defendant's decision holding that police officers, firemen and deputy sheriffs are covered by the Act in question.

The Act consists of its title; Section 1, a declaration of policy; Section 2, definitions; Section 3, compensation; Section 4, exclusions; Section 5, regulation making and administrative power to the Commissioner of Labor; Section 6, enforcement; and Section 7, provisions to be cumulative. No savings clause appears.

The title of the Act is as follows:

"AN ACT TO ESTABLISH MINIMUM WAGES AND HOURS FOR EMPLOYEES IN THE STATE OF MONTANA; DELEGATING TO THE COMMISSIONER OF LABOR THE DUTY OF ADMINISTERING THE ACT; AND PROVIDING ENFORCEMENT."

In Section 4 are listed exclusions, among which is subdivision (j):

"Any individual employed in a bona fide executive, administrative, or professional capacity as these terms are defined and delimited by regulations of the commissioner."

Section 5 provides:

"Regulations. The commissioner shall make and revise administrative regulations to carry out the purposes of this act. Such regulations shall take effect upon publication by the commissioner. Any person who is aggrieved by an administrative regulation may obtain a hearing before the commissioner upon filing written protest with the commissioner who shall thereupon set such matter for hearing in the county of residence of such protestant within thirty (30) days after receipt of such protest. After such hearing, the commissioner shall promulgate such further administrative regulations as the evidence produced at said hearing shall justify."

Pursuant to Section 5, the Commissioner, defendant here, issued regulations, including a regulation further defining and delimiting the words—executive, administrative and professional, as used in the exclusion set forth above in subdivision (j) of Section 4.

The plaintiffs here are the City of Billings and the County

of Yellowstone. The city has policemen and firemen employed; the county has deputy sheriffs employed. Because of the nature of both law enforcement and fire protection work, and from past custom, practice and agreement, these officers work overtime by assignment and because of the natural progression of what might be termed investigative or duty requirements. We observe parenthetically that crimes and fires do not keep regular shift hours; budgets and planning are therefore difficult.

Following the issuance of regulations defining the term "individual employed in a bona fide professional capacity," plaintiffs sought and received an interpretation by the Commissioner of Labor. He ruled, in writing, that police officers, firemen, and deputy sheriffs were not excluded under the Act.

The action was brought. Defendant, as well as some of amicus curiae, attack the action by motion to dismiss on procedural grounds (1) that no emergency exists and this Court should not accept original jurisdiction, (2) that administrative remedies have not been exhausted, and (3) that there are fact issues which should be tried in the trial court. The latter two grounds are tied together in that further administrative hearings might be needed to determine whether individual officers have enough training, experience, and scientific know-how to qualify for "professional" status and thereby be exempt from provisions of the Act.

In this opinion, we shall neither go into nor determine the facts. We deny the motion to dismiss as to the ground of our acceptance of original jurisdiction. The emergency nature clearly appears sufficient for this Court to determine the legality of the Act since its effect is broad upon all the citizens of Montana. See Rule 17, M.R.App.Civ.P.; State ex rel. Schultz-Lindsay Construction Co. v. State Board of Equalization, 145 Mont. 380, 403 P.2d 635.

Plaintiffs' first contention is that the Act is unconstitutional in:

(a) The title is defective in contravention of Article V, Section 23 of the Montana Constitution.

(b) It is an invalid delegation of legislative power in that it delegates power of definition of terms as well as power to administer and enforce the Act without standards or guidelines.

(c) The Act is so vague, Section 4(j) in particular, that by providing criminal penalties the Constitution is violated.

(d) No savings clause, so if the Act is defective in one part the entire Act fails.

(e) It is also urged that the classifications are arbitrary and result in a lack of uniformity.

Article V, Section 23 of the Montana Constitution provides:

"No bill, except general appropriation bills, and bills for the codification and general revision of the laws, shall be passed containing more than one subject, *which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title,* such act shall be void only as to so much thereof as shall not be so expressed." (Emphasis added)

This Court in City of Helena v. Omholt, 155 Mont. 212, 219-221, 468 P.2d 764, discussed the application of Article V, Section 23 to an appropriation bill, H.B. 557, Laws of 1969:

"The title of the appropriation bill, House Bill No. 557, contains this language:

" 'An Act Appropriating Money to the State Auditor From the Police Account of the Earmarked Revenue Fund for the Biennium Ending June 30, 1969, for the Purposes Enumerated in Chapter 261, Laws of 1965; and Providing the Method of Disbursement.'

"This title indicates that the purpose of the appropriation bill is to appropriate money to carry out the purposes enumerated in Chapter 261, Laws of 1965 (codified as sections 11-1834 through 11-1837, R.C.M.1947). The enumerated purposes of Chapter 261, Laws of 1965, are expressed in its title:

" 'An Act to Provide for Annual Payments From the Premium Tax Collected on Motor Vehicle Insurance to Every City or Town Having a Police Department; Providing How Such Payments Shall be Expended by The Cities or Towns.'

"The provision for annual payment to every city or town is mandatory. Section 1 of Chapter 261, Laws of 1965 (codified as section 11-1834), provides in pertinent part:

" 'At the end of each fiscal year the state auditor *shall issue and deliver* to the treasurer of each city and town in Montana, having a police department, *his warrant* in an amount &ast; &ast; &ast; [determined by the formula used for fire departments]'. (Emphasis added; bracketed material paraphrased.)

"This mandatory annual payment of state funds to every city and town having a police department is not effectuated by Section 2 of House Bill No. 557. On the contrary, such purpose is defeated thereby. Section 2 prohibits disbursement of state funds appropriated to make these mandatory annual payments to those cities and towns not meeting certain qual-. ifications and requirements, principally those cities not making a mill levy for payment of reserve police officer's salaries and those cities not withholding 5% of the salaries of its active police officers.

"In addition the title of House Bill No. 557 contains the concluding phrase 'and Providing the Method of Disbursement'. Nowhere in the body of the act is any mention made of any 'Method of Disbursement', unless the prohibitions and restrictions on any disbursements to nonqualifying cities falls within the ambit of that term. We conclude that such interpretation requires an active and fertile imagination, and decline to so construe it.

"For the foregoing reasons, House Bill No. 557 contains a false and deceptive title. Art. V, Sec. 23 of the Montana Constitution is designed to prevent legislators and the people from being misled by false or deceptive titles. This Court succinctly

summarized this purpose in Johnson v. Meagher County, 116 Mont. 565, 570, 155 P.2d 750, 752:

" 'What were the purposes of section 23 of Article V of the Constitution? "Stated briefly, those purposes are to restrict the Legislature to the enactment of laws the subjects of which are made known to the lawmakers and to the public, to the end that any one interested may follow intelligently the course of pending bills to prevent the legislators and the people generally being misled by false or deceptive titles, and to guard against the fraud which might result from incorporating in the body of a bill provisions foreign to its general purpose and concerning which no information is given by the title." (Citing cases.) (State ex rel. Foot v. Burr, 73 Mont. 586, 238 P. 585.)'

"To like effect see Hale v. Belgrade Co., Ltd., 74 Mont. 308, 240 P. 371; State ex rel. Holliday v. O'Leary, 43 Mont. 157, 115 P. 204; Russell v. Chicago, B. & Q. Ry. Co., 37 Mont. 1, 94 P. 488, 501; Yegen v. Board of County Commissioners, 34 Mont. 79, 85 P. 740; State v. Brown, 29 Mont. 179, 74 P. 366. The test under this provision of the Montana Constitution is simply this—Is the title of legislation in question of such character as to mislead the public or members of the legislature as to the subjects embraced? State v. Driscoll, 101 Mont. 348, 54 P.2d 571; Arps v. State Highway Commission, 90 Mont. 152, 300 P. 549."

Here, we have a simple, brief title which grants the Commissioner of Labor the authority and duty to administer the Act. Section 2 of the Act defines seven words or terms—commissioner, wage, employ, employee, occupation, farm worker, and, farm or ranch. Then, in Section 5 the commissioner is granted power to carry out the purpose of the Act. He can, and did, define the terms in the exclusion section, Section 4(j), and further, determined and delimited the terms within standards marked out by the fair and natural meaning of the terms used.

In Bacus v. Lake County, 138 Mont. 69, 81, 354 P.2d 1056, 1062, this Court said:

" 'Delegation of power to determine who are within the operation of the law is not a delegation of legislative power. * * * But it is essential that the Legislature shall fix some standard by which the officer may be governed, and not left to be controlled by caprice.'

"We agree with this statement of the law and go further by saying that the standard must not be so broad that the officer or board will have unascertainable limits within which to act."

In Sigety v. State Board of Health, 157 Mont. 48, 482 P.2d 574, 28 St.Rep. 268, this Court again discussed Article V, Section 23 of the Montana Constitution as it affected the validity of the Dredge Mining Regulation and Land Preservation Act, holding that the body of that act in effect, added to the title other forms of mining than simple dredge mining and was thus invalid. *Sigety* is distinguishable because here the title puts anyone on notice that the Act seeks to regulate wages and hours and delegates the duty of administering the Act to the commissioner.

Plaintiffs, however, insist that nowhere can we find the standards and guidelines, and contend that the policy of the Act is not sufficiently set forth.

Plaintiffs rely on *Bacus*. The Act in question here, when read as a whole, spells out the purpose and the procedures to be used to implement the Act. It sets forth the duties of the commissioner, wages that must be paid, and persons excluded. By contrast, in *Bacus* section 69-801, R.C.M.1947, purported to give Boards of Health unrestricted, even omnipotent, authority to enact rules and regulations pertaining to "prevention of disease and the promotion of public health." We found this to be without sufficient standards and to give unascertainable limits. Conceivably, under "promotion of public health" the boards might even have regulated hours of work! We held that unconstitutional.

In Montana Milk Control Board v. Rehberg, 141 Mont. 149, 161, 376 P.2d 508, 515, it was contended that an invalid delegation of legislative power was granted to the milk control board. The Milk Control Act provided the board should act to provide producers and distributors of milk with a reasonable profit. It did not say the board had the power to set a minimum price, but this Court upheld the act, stating "* * * reasonable profit contemplates a minimum price at which milk can be sold in view of surrounding circumstances." The power to set a minimum price was held to bear a real and substantial relationship to the object to be attained.

The Act here, the Minimum Wage Act, actually gives more specific guidelines than did the Milk Control Act.

For further discussion of the *Bacus* rule, see City of Missoula v. Missoula County, 139 Mont. 256, 362 P.2d 539 and Plath v. Hi-Ball Contractors, Inc., 139 Mont. 263, 362 P.2d 1021.

So far, we have discussed the title of the Act and the delegation of legislative power as one issue. Here, we think this proper because if the subject of the legislation is sufficiently set forth in the title, and the body of the Act does not by procedural methods deceive or mislead the legislature or public, then the title is not defective. There is no secretive or totally unrelated legislation within the body of the Act.

To further determine whether sufficient standards or guidelines exist, we shall look to decisions of the federal courts which have been ruling on this administrative power delegated by the Congress for decades. We look particularly to the field of labor legislation; that is, to wages and hours legislation. The Fair Labor Standards Act is similar to our Minimum Wage Act in enunciating the exemptions from the provisions of the Act.

29 U.S.C.A. § 213 provides:

"(a) · The provisions of sections 206 [minimum wages] and 207 [maximum hours] of this title shall not apply with respect to—

"(1)  any employee employed in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary  *  *  *)".

In Fanelli v. United States Gypsum Co., 141 F.2d 216 (2nd Cir. 1944), the court held that the authorization to the administrator to define and to limit by regulations the terms [executive, administrative, or professional] used in the section, did not unconstitutionally delegate power vested in the legislative branch.

In Devoe v. Atlanta Paper Co., 40 F.Supp. 284,286 (D.C.Ga. 1941), the court held the delegation of power to the administrator to define "employee employed in a bona fide executive  *  *  *  capacity" is constitutional, and such power is constitutionally exercised where the definition formulated by the administrator is within the limits laid down by the Congress which  "*  *  *  *are marked out by the fair and natural meaning of the words 'bona fide executive  *  *  *  capacity.'* "* (Emphasis added). This indicates that to find the power to have been unconstitutionally exercised, this Court will have to find the definitions of the Commissioner of Labor to be outside the fair and natural meaning of the words. See Walling v. Yeakley, 9 Cir., 140 F.2d 830.

■ ■  Thus, we conclude the Act does not violate Article V, Section 23 of the Montana Constitution, nor does it constitute an unlawful delegation of either legislative or judicial power. (For judicial or quasi-judicial power, see State ex rel. Lee v. Montana Livestock Sanitary Board, 135 Mont. 202, 339 P.2d 487.)

■  By what we have said heretofore, we have also disposed of the third contention—that the act is so vague as to be unconstitutional.

This leaves two constitutional issues urged by plaintiffs and intervener Bangs. (1) The lack of a savings clause which only becomes important if we find one part of the act to be

208

unconstitutional. (2) That the classifications are arbitrary and result in a lack of uniformity, urged by intervener Bangs. In the broad sweep of our assumption of jurisdiction here, intervener Bangs would have us examine fact situations that we are not prepared to examine. Whether or not a reasonable classification is made in the Act, is beyond the scope of our inquiry here. Whether the statute is wholly lacking in rational justification and is thus patently arbitrary in its Section 3 which, briefly, makes a distinction between students employed at amusement and recreational establishments operating on a seasonal basis and those employed on a year-round basis, is not here considered. We do, however, note the general rule that a statute is presumed to be constitutional and will not be held otherwise unless it clearly and palpably violates the law.

In establishing classification, it is to be presumed the legislature had before it the necessary information leading it to make such classification. State v. Loomis, 75 Mont. 88, 242 P. 344; State v. Safeway Stores, Inc., 106 Mont. 182, 76 P.2d 81; Calvert v. City of Great Falls, 154 Mont. 213, 462 P.2d 182.

Having disposed of the constitutional issues, we turn to plaintiffs' second contention. In the petition, or complaint, for declaratory judgment, plaintiffs contend:

"That such act conflicts with the statutes of the State of Montana and particularly the following:

"1. Chapter 18, Section 11 of the Revised Codes of Montana, 1947, as amended and particularly Section 11-1832 R.C.M., 1947.

"2. Chapter 19, Section 11 of the Revised Codes of Montana, 1947, as amended and particularly Section 11-1932 R.C.M., 1947.

"3. Chapter 6, Section 25 of the Revised Codes of Montana, 1947, as amended and particularly Section 25-604, R.C.M., 1947 and further that the plaintiffs are in doubt as to the intention and provision of said act in respect to whether or not deputy sheriffs, police officers and firemen are or may be excluded

from the provisions of such act under Section 4(j) as being persons who are employed in a 'professional capacity'."

The responsive pleadings of defendant and intervener Sheehy bring in issue, by way of denial, the effects of the aforementioned code chapters. Additionally, the complaint alleges the defendant Commissioner of Labor has erred in his ruling that police officers, firemen, and deputy sheriffs are included within the Act.

By way of motion to dismiss, it is contended that administrative remedies have not been exhausted; that the Act grants a means of review in its Section 5; that fact issues as to the training, education and experience of officers have never been submitted; and, that therefore this Court should not rule. However, our inquiry here will be whether or not the exclusion, Section 4(j) in particular, was intended by the legislature to include policemen, firemen and deputy sheriffs. In other words, are policemen, firemen, and deputy sheriffs included in the terms "bona fide executive, administrative, or professional capacity"?

Admittedly, they are not labeled as such. However, we find an examination of Chapter 18 and Chapter 19 of Title 11 and Chapter 6 of Title 25 and the history of these chapters reveals that policemen and firemen are treated by the legislature as a professional and distinct class of employees. As to deputy sheriffs, an examination reveals particularized and special treatment by the legislature sufficient to remove them from the Minimum Wage Act.

Chapter 18 of Title 11 was first enacted to cover police officers in 1907. It has been continued with amendments to date. Briefly, Chapter 18 provides for: police departments; their management; permanent appointment after examination; probationary appointment and confirmation; removal or suspension only as provided by law; exemption from military duty or jury duty while on duty; immunity from arrest while on duty; barred from holding other office; barred from polit-

ical activity; and, other specific qualifications are listed. Then, salary is established as a minimum. In first and second class cities, a five day work week is established and a minimum wage for a daily service of eight consecutive hours work is established. All of these provisions, and more, show a legislative history of completely separate treatment of policemen as a class. We find this legislative treatment leaves clearly the legislative intent to treat policemen as professional employees in the same sense that the term "bona fide * * * professional" is used in the exclusion under Section 4(j) of the Act.

In Chapter 19 of Title 11, firemen are likewise separately treated, dating back to the year 1899. The details are different from the legislative treatment of policemen, but the overall legislative intent is the same. Again we find the legislative treatment and history reveals the intent to treat firemen as professional employees in the same manner as "bona fide * * * professional" individuals are treated in the exclusion under Section 4(j).

We are aware an argument can be made that had the legislature so intended, it would have said so. However, by our treatment and analysis of the Minimum Wage Act, we have shown that the legislature only established policy and basic guidelines. It did not detail it; neither did it purport to amend, but only to make the Minimum Wage cumulative, as will be more fully developed.

Section 25-604, R.C.M.1947, relating to deputy sheriffs, was amended in 1971 by the same legislature that enacted the Minimum Wage Act here considered. In that act it is provided deputy sheriffs shall not be paid a salary of more than 90% of the sheriff's salary; undersheriffs not more than 95% of the sheriff's salary. In first, second and third class counties, deputy sheriffs are to receive not less than 75% nor more than 90% of the salary of the sheriff. These are specific provisions relating to specific offices.

██ ██  In the construction of a statute the office of the court is to ascertain and declare what is in terms or in substance contained in the statute, and where there are several provisions or particulars such a construction is, if possible, to be adopted as will give effect to all (section 93-401-15, R.C.M.1947). In the construction of a statute the intention of the legislature is to be pursued if possible; and when a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it (section 93-401-16, R.C.M.1947).

██  Where one statute deals with a subject in general and comprehensive terms, and another deals with a part of the same subject in a more minute and definite way, the latter will prevail over the former to the extent of any necessary repugnancy between them. Barth v. Ely, 85 Mont. 310, 278 P. 1002; In re Stevenson's Estate, 87 Mont. 486, 289 P. 566.

In State ex rel. State Aeronautics Comm. v. Board of Examiners, 121 Mont. 402, 417, 194 P.2d 633, 641, this Court said:

"'* * * [I]t is a canon of statutory construction that a later statute general in its terms and not expressly repealing a prior special or specific statute, will be considered as not intended to affect the special or specific provisions of the earlier statute, unless the intention to effect the repeal is clearly manifested or unavoidably implied by the irreconcilability of the continued operation of both, or unless there is something in the general law or in the course of legislation upon its subject matter that makes it manifest that the legislature contemplated and intended a repeal.' "

██  The specific intention of the legislature indicates, from the very provisions of the Act, in Section 7, that the legislature intended all of the provisions of law relating to minimuum wages and hours to be cumulative. The Minimum Wage Act of 1971 did not repeal any prior acts. This is reinforced by the fact that in 1971, at the same time and in the same session as

the passage of the Minimum Wage Act, the legislature also amended section 25-604, R.C.M.1947, thereby at the same time placing its stamp of approval upon the provisions of that statute.

Where statutes relate to the same general subject they should be so construed together, where there is no inconsistency between them, so as to give effect to both where possible. State ex rel. Ronish v. School District No. 1 of Fergus County, 136 Mont. 453, 348 P.2d 797. All acts relating to the same subject, or having the same general purpose as the statute being construed, should be read in connection with such statute. State ex rel. McHale v. Ayers, 111 Mont. 1, 105 P.2d 686. Statutes passed at the same time, and relating to the same general subject are to be construed together and both given effect if possible. Belote v. Bakken, 139 Mont. 43, 359 P.2d 372.

The provisions of section 25-604, R.C.M. 1947, and the provisions of the Minimum Wage Act of 1971 are in conflict. In such case the special act will prevail over the general provisions of the Minimum Wage Act. Moreover, the salaries granted to county officers are based upon an annual wage rather than a monthly wage. The maximum salary of 95% or 90%, as the case may be, for undersheriffs and deputies is also the minimum fixed by that statute. Because a maximum is provided in section 25-604, which in most cases is also the minimum salary, it is obvious that the time and a half for overtime for hours in excess of 40 hours per week could not be enforced. Section 16-2414, R.C.M.1947, requires county offices to be open for five days a week from 8:00 a.m. until 5:00 p.m., but does not set forth the hours of work for employees in the offices. The reenactment of section 25-604 in the 1971 Session, by an amendment indicates a legislative intent to keep that statute specifically in force.

Having concluded that policemen, firemen and deputy sheriffs are not covered by the Act, it is not necessary to discuss other issues concerning "Kelly shifts" etc.

Accordingly, let this opinion be the declaratory judgment sought.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DALY and HASWELL, concur.

MR. JUSTICE JOHN C. HARRISON, (concurring in part and dissenting in part):

I concur in the majority's opinion holding that Chapter 417, Laws of 1971, is constitutional, but dissent in its holding that policemen and firemen are not covered by the act.