No. 85-461

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

BRUCE W. PHILLIPS, et al.,

        Plaintiffs and Appellants,

-vs-

LAKE COUNTY,

        Defendant and Respondent.

---

APPEAL FROM: District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Christian, McCurdy & Wold; Douglas J. Wold argued,
Polson, Montana
Manley & Smith; Brian J. Smith, co-counsel, Polson,
Montana

    For Respondent:

        French, Mercer, Grainey & Duckworth; Edward K.
Duckworth argued, Polson, Montana

    For Amicus Curiae:

        Michael G. Alterowitz, Carbon County Attorney,
Red Lodge, Montana
Wm. Nels Swandal, Park County Attorney, Livingston,
Montana
Richard Simonton, Dawson County Attorney, Glendive,
Montana

---

                      Submitted: April 1, 1986

                      Decided: June 10, 1986

Filed: JUN 10 1986

*[signature]*

Clerk

Mr. Justice John C. Harrison delivering the Opinion of the Court.

Appellants are deputy sheriffs ("Deputies") of Lake County, Montana. Each Deputy separately filed a complaint stating, among other things, a wage claim against respondent Lake County ("Lake County") seeking payment for overtime hours worked. Their individual claims were consolidated by the Lake County District Court. The Deputies seek $1,389,021.60 in overtime, penalties, interest and attorney's fees from Lake County. An agreed statement of facts was submitted and both the Deputies and Lake County filed motions for partial summary judgment on the issues of: (1) whether deputy sheriffs are entitled to compensation for overtime hours worked in excess of 40 hours per week or 2,080 hours per year, (2) whether a "year of service" for calculating longevity benefits should be based on a calendar year or 2,080 hours, and (3) whether the Deputies are entitled to the statutory penalties, interest, costs and attorney's fees. The Honorable C. B. McNeil, District Judge, denied the Deputies motion for partial summary judgment and granted summary judgment in favor of Lake County. The Deputies filed a Motion for Reconsideration. A hearing was held and the summary judgment in favor of Lake County was affirmed. The Deputies appeal from the order denying their motion for partial summary judgment and granting summary judgment to Lake County. We affirm the judgment of the District Court.

The facts relevant to the disposition of this appeal are basically undisputed by the parties.

Each of the appellant Deputies was a duly appointed and acting deputy sheriff of Lake County, Montana. The

2

respondent is the Lake County Board of Commissioners. At all times relevant to this appeal it was the policy of the Lake County Sheriff's Department to schedule its road Deputies, including the complaining Deputies, to work in excess of 2,080 hours per year (40 hours X 52 weeks=2,080). Their routine work schedule was to work six days each week and often more than eight hours per day. Each Deputy has at all times been paid a monthly salary. Since October 1, 1981, the Deputies were paid longevity pay at the rate of 1% for each calendar year of employment beginning on their employment anniversary date following October 1, 1981. Lake County never established, by resolution, that any undersheriff or deputy sheriff who worked in excess of his regularly scheduled work period would be compensated for his overtime. Part-time employees of the Lake County Sheriff's Department, who were not deputy sheriffs, were paid overtime.

As of July 1, 1984, Lake County by resolution began paying each deputy sheriff the additional sum of $300 per month as compensation for overtime. On April 15, 1985, the United States Supreme Court conclusively decided the case of Garcia v. San Antonio Metropolitan Transit Authority (1985), _____ U.S. _____, 105 S.Ct. 1005, 83 L.Ed.2d 1016, which made overtime compensation for the Deputies mandatory. In June 1985, Lake County paid all Deputies overtime retroactive to April 15, 1985, pursuant to the requirements of Garcia and the federal Fair Labor Standards Act. The County subtracted from the retroactive overtime payments the amount of $300 per month for the months of April and May, 1985. Since June 1, 1985, the Lake County deputy sheriffs were no longer working 6 days per week.

3

The Deputies present the following issues for review by this Court:

(1) Whether the Deputies are entitled to overtime compensation after October 1, 1981?

(2) Whether the Deputies are entitled to have longevity benefits calculated at the rate of 1% for every 2,080 hours worked rather than 1% for each calendar year?

(3) Whether the Deputies are entitled to overtime benefits at the rate of time-and-a-half over 40 hours per week beginning April 15, 1985?

(4) Whether the Deputies are entitled to compensation for "on-call" time?

(5) Whether the Deputies are entitled to penalties, interest, attorney's fees and costs?

The fundamental issue to be decided in this case is whether the Deputies are entitled to compensation for overtime hours worked in excess of 40 hours per week or 2,080 hours per year from October 1, 1981, to April 15, 1985. At the outset this Court recognizes the potential importance the answer to this issue has for the State of Montana. For this reason we compliment counsel for both parties on presenting exhaustive and scholarly arguments on this important and complex question. We also note that after thoroughly analyzing this issue, we can find little fault with Judge McNeil's reasoning found in his orders granting and affirming summary judgment for Lake County. Therefore, we basically adopt the rationale set forth in Judge McNeil's decisions and offer the following opinion as a supplement and explanation to the same.

I.

4

Whether the Deputies are entitled to overtime compensation after October 1, 1981?

The heart of this first issue centers around this Court's decision in City of Billings v. Smith (1971), 158 Mont. 197, 490 P.2d 221. This case was decided immediately after the 1971 Montana Legislature adopted the Minimum Wage and Overtime Compensation Act ("MWOCA") which is codified in § 39-3-401, et seq., MCA. In City of Billings this Court was basically asked to decide whether (1) the MWOCA itself was constitutional; and (2) whether policemen, firemen and deputy sheriffs were covered by the MWOCA. The Court found that the MWOCA was constitutional, and that policemen, firemen and deputy sheriffs were not covered by the Act. The Court held that policemen and firemen were both "professional employees" and thus exempt from the MWOCA under the professional employee exclusion. However, the Court did not find that deputy sheriffs were also "professional employees." Instead, the Court went in a totally different direction to exempt the deputy sheriffs from the MWOCA. The Court found that deputy sheriffs were exempt from the MWOCA by virtue of "particularized and special" statutory treatment within Montana's code. The particularized and special treatment which exempted the deputy sheriffs from the MWOCA was a statute which set their total compensation at 90% of the sheriff's salary (§ 25-604, R.C.M., 1947). The Court reasoned in City of Billings that when a general statute (MWOCA) and a specific statute (§ 25-604, R.C.M., 1947) are inconsistent, the latter is paramount to the former. Thus, under this analysis, the deputy sheriffs were not entitled to overtime compensation under the MWOCA. As the Court explained in City of Billings:

5

As to deputy sheriffs, an examination reveals particularized and special treatment by the legislature sufficient to remove them from the Minimum Wage Act.

. . .

Where one statute deals with a subject in general and comprehensive terms, and another deals with a part of the same subject in a more minute and definite way, the latter will prevail over the former to the extent of any necessary repugnancy between them. (Citations omitted).

. . .

The provisions of section 25-604, R.C.M. 1947, and the provisions of the Minimum Wage Act of 1971 are in conflict. In such case the special act will prevail over the general provisions of the Minimum Wage Act.

City of Billings, 490 P.2d at 228, 229, 230.

The Deputies point out this statutory conflict between the MWOCA and § 25-604, R.C.M., 1947, existed until 1981 when the legislature enacted House Bill 558 as Chapter 603 of the 1981 Session Laws (encoded in Title 7, Chapter 4, Part 25, MCA). The Deputies essentially argue that Chapter 603 of the 1981 Session Laws struck down the "90% limitation" of § 25-604, R.C.M., 1947. In doing so, the Deputies argue, Chapter 603 struck down the only obstacle in allowing them to receive overtime compensation under the MWOCA. The Deputies argue that since the reason for the rule denying them overtime compensation ceased to exist effective October 1, 1981, overtime compensation should be allowed from that date forward.

Lake County, on the other hand, argues that when the legislature struck down § 25-604, R.C.M., 1947, by enacting Chapter 603 of the 1981 Session Laws, the Deputies were still excluded from the MWOCA by this Court's holding in City of Billings. In other words, Lake County argues that the Deputies' compensation continued to be controlled by

6

specific legislation thus exempting them from the overtime provisions of the MWOCA. We agree.

Lake County correctly points out that Chapter 603 of the 1981 Session Laws constitutes a specific statute governing all forms of compensation to which deputy sheriffs are entitled. The particular provisions of Chapter 603 merely redefined the forms of compensation which were governed by the "90% limit" and § 25-604, R.C.M., 1947. The City of Billings case holds that such a specific statute, in and of itself, removes deputy sheriffs from coverage under the MWOCA. City of Billings, 490 P.2d at 229.

The resourceful argument of the Deputies cannot change the essential fact that Chapter 603 of the 1981 Session Laws remains to this date a "specific [provision] relating to [a] specific [office]," and thus controls the issue of compensation. City of Billings, 490 P.2d at 229. The City of Billings decision applies with equal vigor and force to Chapter 603 as it did to § 25-604, R.C.M., 1947. That is, the MWOCA deals with the subject of overtime in a "general" way, while Chapter 603 addresses the central topic of deputy sheriffs' compensation, including overtime, in a more "minute" and definite way. City of Billings, 490 P.2d at 229. The specific, therefore, must prevail over the general. Consequently, the MWOCA still does not apply to the Deputies.

It is also apparent to this Court that the legislature intended the same result by enacting Section 7 of Chapter 603. Section 7 has been codified as § 7-4-2507, MCA. This section holds that if there is a conflict between sections 2 through 5 of Chapter 603 and any other law (which parenthetically must include the MWOCA), that sections 2

7

through 5 govern with respect to deputy sheriffs. Section 7 of Chapter 603 provides:

> 7-4-2507.    Deputy sheriff and undersheriff provisions--construction.    If there is a conflict between 7-4-2508 through 7-4-2510 and any other law, 7-4-2508 through 7-4-2510 govern with respect to undersheriffs and deputy sheriffs.

After determining the MWOCA does not apply to the Deputies, the critical question now becomes whether Chapter 603 of the 1981 Session Laws allows the Deputies to be compensated for their overtime. After carefully analyzing the arguments of the parties, we agree with the District Court and Lake County that the legislative history of the 1981 Session clearly shows that the payment of overtime for the Deputies and the rate thereof is optional at the discretion of the Lake County Commissioners.

Chapter 603 of the 1981 Session Laws (encoded in Title 7, Chapter 4, Part 25, MCA) provides in section 3 that a sheriff's department may establish a work period other than the 40 hour workweek established by the MWOCA for determining when an employee may be paid overtime. Section 4 of Chapter 603 provides that the county commissioners may, by resolution, establish that a deputy sheriff who works in excess of his regularly scheduled work period will be compensated for the hours worked in excess of the work period at a rate to be determined by the commissioners. Sections 3 and 4 of Chapter 603 have been codified as § 7-4-2509(1) and (2) respectively:

> 7-4-2509.   Sheriff's department--work period in lieu of workweek--overtime compensation.   (1) (a) A sheriff's department may establish a work period other than the workweek provided in 39-3-405 or 7-32-2111 for determining when an employee may be paid overtime.

(b) The aggregate of all work periods in a year, when expressed in hours, may not exceed 2,080 hours.

(2) The board of county commissioners _may_ by resolution establish that any undersheriff or deputy sheriff who works in excess of his regularly scheduled work period will be compensated for the hours worked in excess of the work period at a rate to be determined by that board of county commissioners. (Emphasis added.)

The District Court correctly points out in its order affirming summary judgment that by use of the permissive word _may_ the legislature made it perfectly clear that payment of overtime for deputy sheriffs and the rate thereof is optional at the sole discretion of the county commissioners. The legislative history of House Bill 558 (enacted as Chapter 603) and Senate Bill 375 supports the same conclusion.

As originally introduced, House Bill 558 was to provide that restrictions imposed upon the compensation of deputy sheriffs does not apply to payment for hours worked overtime. Senate Bill 375, as originally introduced, provided that a sheriff's department may establish a work period other than a 40 hour workweek for determining when an employee must be paid overtime and further provided that any deputy sheriff who works in excess of his work period must be compensated at a rate not less than 1½ times his hourly rate. Senate Bill 375 specifically provided:

NEW SECTION. Section 3. Option to establish workperiod in lieu of workweek. (1) A sheriff's department may establish a workperiod other than the workweek provided in 39-3-405 for determining when an employee _must_ be paid overtime.

(2) The aggregate of all workperiods in a year, when expressed in hours, may not exceed 2,080 hours.

NEW SECTION. Section 4. Compensation for hours worked overtime. Any undersheriff or deputy sheriff who works in excess of his regularly scheduled workperiod _must_ be compensated for the hours worked in excess of the workperiod at a rate

9

of not less than 1½ times the hourly rate at which he is employed. (Emphasis added.)

As reported out of the Committee on State Administration on Second Reading, the caption of House Bill 558 had been amended to read: "An Act to Revise the Compensation Provisions Relating to Deputy Sheriffs and Undersheriffs" and contained the mandatory provisions incorporated from Senate Bill 375 set forth above.

As passed in its final form, section 3 (§ 7-4-2509(1)(a)) was amended by changing the phrase "when an employee must be paid overtime" to "when an employee may be paid overtime." Furthermore, section 4 (§ 7-4-2509(2)) was amended by deleting the provision that a deputy sheriff must be compensated for overtime at a rate of 1½ times his hourly rate and substituting the provision as set forth above that the commissioners may, by resolution, provide for overtime and the rate thereof.

We conclude, as does the District Court, that by the permissive language in the law passed by the 1981 legislature and by the legislative history set forth above, that payment of overtime for deputy sheriffs and the rate thereof is optional at the discretion of the county commissioners. As the District Court succinctly stated:

> It is painfully clear that the legislature considered the issue head-on, fully considered mandating the payment of overtime hours for deputy sheriffs at the same rate as the Minimum Wage Act and decided to make such overtime payment and the rate thereof optional at the discretion of the county commissioners.. . . It would be an insult to the legislature to question their intent in amending the legislation from the mandatory "must" as introduced, to the permissive, discretionary "may" as passed by that body.

As applied to the instant case, the Lake County Commissioners exercised their discretion beginning October 1,

10

1981, by their failure to adopt a resolution providing for the payment of overtime compensation to the Deputies under § 7-4-2509(2), MCA. This means the Deputies received no pay for hours worked in excess of a 40 hour workweek. As the District Court points out, this result may seem unfair, but it was not unlawful.

As pointed out in the facts section of this opinion, the Lake County Commissioners have now adopted a resolution providing for the payment of overtime compensation to the Deputies retroactive to April 15, 1985. This new resolution was based on the United State Supreme Court decision of Garcia v. San Antonio Metropolitan Transit Authority (1985), ____ U.S. ____, 105 S.Ct. 1005, 83 L.Ed.2d 1016, which basically held that the minimum wage and overtime compensation provisions of the Fair Labor Standards Act ("FLSA") are now to be enforced against states and their political subdivisions. Therefore, overtime compensation for the Deputies is now mandatory.

II.

Whether the Deputies are entitled to have longevity benefits calculated at the rate of 1% for every 2,080 hours worked rather than 1% for each calendar year?

As part of the 1981 Legislature's program to redefine the forms of compensation for deputy sheriffs, section 5 of Chapter 603 (codified as § 7-4-2510, MCA) was enacted providing as follows:

> 7-4-2510. Sheriff's department--longevity payments. Beginning on the date of his first anniversary of employment with the department and adjusted annually, a deputy sheriff or undersheriff is entitled to receive a longevity payment amounting to 1% of the minimum base annual salary for each year of service with the department. This payment shall be made in equal monthly installments.

11

The Deputies correctly point out that the language of this statute is simple. Beginning on October 1, 1981, a deputy sheriff is entitled to additional compensation of 1% of the minimum base salary "for each year of service with the department." The Deputies argue that the term "year of service" means 2,080 hours as specifically defined by the Attorney General. See, 39 Op. Att'y Gen. 78 (1982). Lake County, on the other hand, argues the term "year of service" means 365 days or a calendar year.

We hold the term "year of service" as used in § 7-4-2510, MCA, should be given its ordinary meaning--365 days or a calendar year. We agree with Lake County and the District Court that had the legislature intended that the term "year of service" to mean 2,080 hours they would have explicitly said that in the statute. Therefore, the Deputies are entitled to longevity payments for each calendar year of service with the department.

### III.

Whether the Deputies are entitled to overtime benefits at the rate of time-and-a-half over 40 hours per week beginning April 15, 1985?

As noted above, the District Court found that the United States Supreme Court case of Garcia mandated overtime compensation for the Deputies effective April 15, 1985. The net effect of the Garcia decision was to apply the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. to the Deputies. Section 207(k) of the FLSA provides basically that the overtime threshold for the Deputies is the lessor of 216 hours per 28 day work period or the average number of hours determined in a study done by the Secretary of Labor. The results of the study done by the Secretary of Labor

12

provided the lesser figure of 171 hours per 28 day work period (approximately 43 hours per 7 day work period). It is this 171 hour threshold that is currently being applied to the Deputies by Lake County and which was found to be appropriate by the District Court.

The Deputies argue the proper threshold for commencement of overtime in the state of Montana is 160 hours under the MWOCA (40 hours per 7 day work period), not 171 hours. It must be observed, the Deputies stress, that the holding of the Garcia case was simply that the FLSA applied to governmental employees, including deputy sheriffs. It is also true, the Deputies concede, that the maximum number of hours that can be worked under the requirements of § 207(k) of the FLSA is 171 hours per 28 days. However, the Deputies point out, the FLSA also includes § 218(a) which provides as follows:

> Section 218. Relation to other laws.
> (a)  No provision of this Act or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this Act or a maximum workweek lower than the maximum workweek established under this Act . . .

The Deputies argue the purpose of § 218 is to provide the employee with a benefit of the lower maximum work week established either by federal law (171 hours) or state law (160 hours). Since the MWOCA establishes a maximum workweek lower than the maximum workweek established under the FLSA, the Deputies argue there is no excuse for noncompliance with the MWOCA.

The argument set forth by the Deputies may be theoretically sound, but it is fundamentally flawed for one very important reason--the MWOCA does not apply to the

13

Deputies.  As explained under Issue I, the MWOCA does not apply to the Deputies because of "particularized and special" statutory treatment by the legislature.  Therefore, because the MWOCA does not apply to the Deputies, federal law (FSLA) is the only law left to establish the payment of overtime for the Deputies.  Consequently, the Deputies are entitled to compensation for overtime (retroactive to April 15, 1985) pursuant to the requirements of Garcia and the FLSA, and Lake County to date has been properly compensating the Deputies based on this standard.

IV.

Whether the Deputies are entitled to compensation for "on-call" time?

As a condition of their employment, the Deputies argue they are required to be "on-call" at various times by Lake County.  The Deputies now argue they are entitled to be compensated by Lake County for this "on-call" time.  The term "on-call" as used in this case means time which is after regularly scheduled work hours for the Deputies, or a day off when the Deputies are out of uniform.  The Deputies claim the on-call policy of Lake County severely restricts their off-duty time because they are required to either remain at home or in a patrol car in anticipation of being summoned back to work.  The current policy of Lake County is not to compensate the Deputies for on-call time.

We agree with the District Court that payment, if any, and the rate to be paid, if any, for "on-call" time was entirely discretionary with Lake County prior to the effective date of the Garcia case, April 15, 1985.  The Deputies claim for on-call time prior to Garcia is simply another overtime claim which was addressed by this Court

14

under Issue I. Since the Lake County Commissioners did not exercise their discretion and pass a resolution providing for the compensation of on-call time, the Deputies are not entitled, as a matter of law, to any such compensation.

With regard to compensation for on-call time since April 15, 1985, we adopt the argument set forth by Lake County that on-call time for the Deputies is not compensable as work time. Lake County has provided this Court with a practical test to gauge just what constitutes "work." The United States Supreme Court, as Lake County explains, has laid down a three-part standard to define work or employment:

> [W]e cannot assume that Congress [in the Fair Labor Standards Act] here was referring to work or employment other than as those words are commonly used--as meaning [1] physical or mental exertion (whether burdensome or not) [2] controlled or required by the employer and [3] pursued necessarily and primarily for the benefit of the employer and his business.

Tennessee Coal, Iron and Railroad Co. v. Muscoda Local No. 123 (1944), 321 U.S. 590, 598, 64 S.Ct. 698, 703, 88 L.Ed 949, 956.

Tennessee Coal was a case decided by the Supreme Court under the FLSA. The high Court, in announcing this test, was interpreting § 203(g) of the FLSA which reads "'employ' includes to suffer or to permit work." 29 U.S.C. § 203(g). As Lake County points out, this is exactly the same definition of "employ" that the Montana Legislature has adopted in § 39-3-201(2), MCA, ("'employ' means permit or suffer to work").

We therefore adopt the Supreme Court's well-reasoned definition of work or employment as used in interpreting Montana's identical statutory language.

15

Further, as Lake County points out, the tenor of federal law in this circuit supports the conclusion that on-call time is to be distinguished from work time. The Ninth Circuit Court of Appeals states:

> The Act [FLSA] does not require payment of wages to an employee merely because he is away from home. Nor does the Act undertake to regulate or restrict reasonable and bona fide agreements whereby an employee agrees to be available if needed. 'Working' is not synonymous with availability for work.

Fox v. Summit King Mines (9th Cir. 1944), 143 F.2d 926, 932.

We agree with Lake County that the Deputies claim under this issue does not stand up under the Tennessee Coal test. On-call time for the Deputies requires no physical or mental exertion. At best, the Deputies may claim they are making themselves available for work. The mere availability for work does not automatically translate into compensable "work" time under any common understanding of that term. Furthermore, Lake County, pursuant to Garcia and the FLSA, is currently paying the Deputies overtime compensation. And, as noted by Lake County, in those occasional emergency situations where a Deputy is called back for extra duty, he will be fully compensated for any overtime actually worked.

We hold that the Deputies on-call time since October 15, 1985, is not compensable as work time, and therefore should not be entered into any calculation for overtime compensation.

V.

Whether the Deputies are entitled to penalties, interest, attorney's fees and costs?

As a result of this litigation, the Deputies point out, the District Court ruled they were entitled to overtime compensation retroactive to April 15, 1985, pursuant to the

16

<u>Garcia</u> decision. The Deputies argue the effect of the District Court's order is a finding in their favor that Lake County failed to pay its employees as required by law. That finding, the Deputies argue, entitles them to a mandatory penalty (§ 39-3-206, MCA), interest (§ 27-1-211, MCA), attorney's fees and costs (§ 39-3-214, MCA) under state law.

The Deputies contend that although they specifically raised their demands for penalties, interest, attorney's fees and costs to the District Court, the court ruled these damages were not applicable. The Deputies argue this was error since the court ruled in their favor as to part of their claim for overtime compensation. Therefore, the Deputies request that this Court order Lake County to pay a penalty, interest, attorney's fees and costs on the post-<u>Garcia</u> overtime which the District Court found to be due and unpaid.

We hold that the Deputies claim for the above mentioned damages must fail. Although the District Court ruled that the Deputies were entitled to overtime compensation from April 15, 1985, forward, this finding does not entitle the Deputies to damages under state law. As the Deputies readily admit, their award of overtime compensation was based on the United States Supreme Court's decision in <u>Garcia</u>. In relying on the <u>Garcia</u> decision, the Deputies are not contending that their post-April 15, 1985, overtime was awarded under color of state law. Rather, the District Court's award must be traced directly to the Deputies federal claims under <u>Garcia</u> and the FLSA. Therefore, because the Deputies did <u>not</u> receive their overtime compensation award under state law, a state law award of a penalty, interest, attorney's fees and

17

costs is entirely inappropriate. Consequently, the Deputies claim for these damages under Montana law must fail.

The Deputies in their briefs and during oral argument failed to assert that Lake County might also be liable for damages under federal law because of their post-<u>Garcia</u> overtime entitlement. This Court must assume that because the Deputies failed to discuss any possible damages against Lake County under federal law, they are conceding that Lake County is not liable for any penalties, interest, attorney's fees or costs under the FLSA. After reviewing the applicable law in this area, we agree with the Deputies tacit conclusion.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

18

Mr. Justice Frank B. Morrison, Jr., dissenting:

I respectfully dissent from the majority opinion and would hold that the deputies are entitled to the overtime provisions of § 39-3-405, MCA, which provides that no employer shall employ any employees for workweek longer than 40 hours unless that employer pays one and one-half times the hourly wage rate.

The majority opinion assumes that the Lake County Sheriff established a work period in compliance with the provisions of § 7-4-2509, MCA. Judge McNeil apparently made the same assumption. The record conclusively shows that no such election was made.

Section 7-4-2509(1), MCA, states:

> Sheriff's department--work period in lieu of workweek--overtime compensation. (1)(a) A sheriff's department may establish a work period other than the workweek provided in 39-3-405 or 7-32-2111 for determining when an employee may be paid overtime.
>
> (b) The aggregate of all work periods in a year, when expressed in hours, may not exceed 2080 hours. (emphasis supplied.)

Deputy sheriffs work irregular hours. Some weeks they may work more than 40 hours per week because of working special events. Some weeks they might work less. Counties did not want to be subject to paying time and a half under the minimum wage law, § 39-3-405, MCA, where deputies work more than 40 hours in one week but less than 40 hours in another week. This situation led to the enactment of § 7-4-2509, MCA. If a county wished, it could elect to escape the provisions of § 7-4-2509, MCA, by establishing set work periods where the total hours in a year would not exceed 2,080, which is 40 hours per week times 52 weeks.

19

Lake County did not ever establish work periods pursuant to § 7-4-2509, MCA. Therefore, under the clear terms of the statute, § 39-3-405, MCA, applies.

The majority opinion mistakenly states that the heart of this issue "centers around the Court's decision in City of Billings v. Smith (1971), 158 Mont. 197, 490 P.2d 221." The Billings case has no application because in 1981 the legislature enacted § 7-4-2509, MCA.

The majority opinion correctly points out that the specific controls over the general. Section 7-4-2509, MCA, is the specific statute which controls the disposition of this case. Under that statute, Lake County failed to establish a work period and, by virtue of the statute, is subject to the payment of overtime wages pursuant to the mandate of § 39-3-405.

This case should be reversed and remanded for proceedings in accordance with the views expressed in this dissent.

_____
Justice

20