**Jesse MONTCLAIR, Plaintiff— Appellant,**

v.

**L.O.I., INC., d/b/a E–Z Money Check Cashing, Inc.; et al., Defendants—Appellees.**

No. 06–35006.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 2007.

Filed Sept. 4, 2007.

D. Michael Eakin, Esq., Montana Legal Services Associates, Billings, MT, for Plaintiff–Appellant.

Renee Coppock, Esq., Jared M. Le Fevre, Esq., Crowley Haughey Hanson Toole & Dietrich, PLLP, Matthew L. Erekson, Billings, MT, for Defendants–Appellees.

Before: CANBY, HALL, and CALLAHAN, Circuit Judges.

MEMORANDUM *

Jesse Montclair filed an action seeking damages under the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962, 1964, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, the Truth in Lending Act, 15 U.S.C. § 1640, and Montana's Deferred Deposit Loan Act (the "Act"), Montana Code Ann. § 31–1–702 et seq. The named defendants were L.O.I., Inc., doing business as E–Z Money Check Cashing Inc. (E–Z Money), which made a deferred deposit loan to Montclair, and Credit Service Company (Credit Service), a collection agency, to whom E–Z Money assigned Montclair's account. Montclair's federal claims were based on his contention that the state court's award of $500 in bad check damages pursuant to Montana Code Ann. § 27–1–717 was a violation of Montana law. The district court held that Credit Service's collection of $500 in bad check charges did not violate Montana law and dismissed the action. Montclair filed a timely appeal, and we now affirm the district court's dismissal of his action.

The underlying facts are not contested and were set forth by the district court as follows:

[I]n June of 2004, E–Z Money made a deferred deposit loan of $200 to Plaintiff pursuant to the Act. In exchange for the loan, Plaintiff would be required to pay $245 to E–Z Money at a later date. As security for this loan, Plaintiff gave E–Z Money a post-dated personal check for $245. When Plaintiff was unable to make the $245 payment, E–Z Money attempted to cash Plaintiff's $245 check, but the check was dishonored for lack of sufficient funds in Plaintiff's account. E–Z Money then assigned the account to Credit Service, who filed an action in the Justice Court of Yellowstone County, Montana seeking $775 on the $200 loan. This amount included $245 for the face value of the check, a $30 bounced check fee, and a $500 bad check penalty. The $500 bad check penalty was sought pursuant to Mont.Code Ann. § 27–1–717(3). On May 6, 2005, Credit Service was awarded default judgment.

A district court's dismissal of an action pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. *Decker v. Advantage Fund, Ltd.,* 362 F.3d 593, 595–96 (9th Cir.2004). Interpretations of state law are also reviewed de novo. *Rabkin v. Oregon Health Sciences Univ.,* 350 F.3d 967, 970 (9th Cir.2003); *Goldman v. Standard Ins. Co.,* 341 F.3d 1023, 1026 (9th Cir.2003).

The linchpin of Montclair's complaint is his contention that Credit Service is forbidden under Montana law from collecting a bad check penalty. He recognizes that Montana Code Ann. § 27–1–717(3) provides for a bad check penalty of up to $500. He contends, however, that Credit Service may not claim this penalty because Montana Code Ann. § 31–1–722 provides that "[i]f there are insufficient funds to pay a check on the date of presentment, a licensee may charge a fee, not to exceed $30." It further states that the "fee charged pursuant to this subsection is a licensee's exclusive charge for late payment," and a "licensee may not collect damages under

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

§ 27–1–717(3) for an insufficient funds check."

Credit Service, however, is not a "licensee" under Montana law. Montana Code Ann. § 31–1–705 provides that a "person may not engage in or offer to engage in the business of making deferred deposit loans unless licensed by the government." However, Montana Code Ann. § 31–1–704 provides that the Act "applies to deferred deposit lenders and to persons who facilitate, enable, or act as a conduit for persons making deferred deposit loans," but *does not apply* to

> a collection agency doing business in this state that has entered into an agreement with a deferred deposit lender for the collection of claims owed or due or asserted to be owed or due to the deferred deposit lender.

Thus, Montana law clearly differentiates collection agencies from licensees.

We agree with the district court that Montclair's assertion that Credit Service is exempt from regulation as a licensee only to the extent that it collects money actually owed the payday lender is not persuasive. It ignores the plain language of both § 31–1–704(2)(b), which excludes from the definition of licensee collection agencies those who have "entered into an agreement with a deferred deposit lender for the collection of claims owed," and § 21–1–722, which states only that a "licensee" may not collect bad check damages beyond a $30 late fee. Furthermore, the district court noted that "the Compiler's Comments in the Annotation to the Montana Code state that the 2001 Montana Legislature inserted § 31–1–704(2)(c) to exempt

'collection agencies collecting for deferred deposit lenders from the provisions of deferred deposit loan laws.' *Montana Code Annotated Annotations 204*, § 31–1–704, Vol. 7. Page 19."

Montclair's other arguments fail in light of the statute's clear language. We cannot conclude that it is irrational to exempt collection agencies from the limitations placed on deferred deposit lenders.[1] Also, we agree with the district court that "the law of assignments commonly grants an assignee greater rights than the assignor."

We decline Montclair's request to certify the question of Montana law to the Montana Supreme Court. Even if this question were not controlled by the Act's plain language, a subsequent contrary interpretation of the Act by the Montana Supreme Court would not necessarily criminalize defendants' past actions.

In sum, Montclair has failed to show that Montana law forbids the collection of a bad check penalty by Credit Service as alleged in Count I, the RICO charge, or that Credit Service was not authorized to collect the bad check penalty as alleged in Count II, the Fair Debt Collection Practices charge.[2]

Our determination that Montana law does not prohibit Credit Service from collecting bad check penalties also requires the dismissal of Montclair's RICO claim against E–Z Money. The RICO claim alleged that the attempted collection of bad check penalties violated Montana law and constituted a pattern of racketeering activity. However, as noted by the district court, "[w]ithout a violation of the Act or the use of any other criminal means, there

---

1. We note that in order to obtain a bad check penalty under the Act, an entity must file an action in a Montana court. Montana Code Ann. § 27–1–717(1). Furthermore, there is no guarantee that an award of a bad check penalty will be collected.

2. Montclair does not challenge on appeal the district court's determination that Count III of his complaint did not state a Truth in Lending claim against E–Z Money.

is no racketeering activity and the Complaint does not state a RICO claim against E–Z Money upon which relief can be granted."

For the foregoing reasons, the district court's dismissal of Montclair's complaint is **AFFIRMED.**[3]

CANBY, Circuit Judge, dissenting:

With all due respect to the majority's view, I dissent. Montana's Deferred Deposit Loan Act was enacted in 1999 to "protect consumers who enter into short-term, high-rate loans...." Montana Code Ann. § 31–1–702. One of the protections provided by the Act is that covered lenders may not charge more than $30 as a bad check penalty. *Id.* § 31–1–722(3). Thus, after Montclair defaulted, E–Z Money Check Cashing, Inc., the lender, could have pursued him for no more than the original $200 principal, plus the $45 interest and a $30 bad check charge, for a total of $275.

Instead of pursuing Montclair directly, however, E–Z Money assigned the account to a collection agency, L.O.I., Inc. L.O.I. sought and obtained a default judgment for $775, representing the $275 owed to E–Z Money plus an additional $500 bad check charge purportedly owed to L.O.I.

This result totally frustrates the remedial purposes of the bad check charge limitation in Montana's Deferred Deposit Loan Act. The protection of a maximum $30 bad check charge provided by the Act becomes wholly illusory, and Montclair becomes subject to a charge more than sixteen times as large.

The majority holds that this anomalous result follows from the fact that collection agencies are exempted from the Deferred

Deposit Loan Act, which otherwise would cover them as "persons who facilitate, enable, or act as a conduit for persons making deferred deposit loans." *Id.* § 31–1–704(1). But that exemption does not require such a broad reading that one of the purposes of the Deferred Deposit Loan Act is wholly frustrated. "Where statutes relate to the same general subject they should be so construed together, where there is no inconsistency between them, so as to give effect to both where possible." *City of Billings v. Smith,* 158 Mont. 197, 490 P.2d 221, 230 (1971); *see also Montana Automobile Ass'n v. Greely,* 193 Mont. 378, 632 P.2d 300, 306 (1981) ("If possible, subsections of a statute should be construed in a manner that will give effect to them all.").

The exemption in issue is provided for "a collection agency doing business in this state that has entered into an agreement with a deferred deposit lender for the collection of claims *owed or due or asserted to be owed or due the deferred deposit lender.*" *Id.* § 31–1–704(2)(b) (emphasis added). It is perfectly reasonable to read this exemption as confined to collection agencies that limit their collection to the amounts owed to the deferred deposit lender.

No such limitation was observed in this case. E–Z Money was forbidden by the Act to collect more than the prescribed fees, including the maximum $30 bad check charge. Indeed, E–Z Money was bound by an express prohibition against collecting or attempting to collect the $500 bad check charge permitted by Montana Code Ann. § 27–1–717(3), the statute under which L.O.I. was awarded $500 as a bad check charge. *See* Montana Code Ann. § 31–1–722(3). And there was only

---

**3.** Montclair concedes that if his federal causes of action were properly dismissed, the dis- missal of his state claims was proper.

one bad check in this case—the original check for $245 written by Montclair and delivered and made payable to E–Z Money. In my view, when L.O.I. sought the additional $500 penalty, it was no longer acting under an agreement to collect "claims owed or due or asserted to be owed or due the deferred deposit lender" as required by the terms of the exemption conferred by § 31–1–704(2)(b). It therefore lost its exemption and violated § 31–1–722(3).

This reasonable construction of the § 31–1–704(2)(b) exemption gives effect to the $30 limitation of bad check charges set forth in § 31–1–722(3). It also gives ample effect to the exemption. It is true that, under this interpretation of § 31–1–704(2)(b), the collection agency's exemption does not free it from the limitation of charges imposed on the lender, because the exemption will be lost if the collection agency seeks to collect more than the lender could. But benefits of the exemption remain for those agencies that confine their collection to the amounts owed to the lender. The Deferred Deposit Loan Act imposes a complete regulatory regime, with requirements of licensing and license fees, § 31–1–705, exposure to examination and payment of examiner's fees, § 31–1–711, annual reports, § 31–1–714, and a number of other burdens. Because the Deferred Deposit Loan Act applies not only to lenders but "to persons who facili-tate, enable, or act as a conduit for persons making deferred deposit loans," § 31–1–704(1), a collection agency may become subject to a number of these requirements in the absence of an applicable exemption. Moreover, the public complaint provision applies not only to licensed lenders but to "an unlicensed person who violates any provision" of the Act, § 31–1–713. The Act also provides civil remedies against licensees and "unlicensed persons to whom [the Act] applies," § 31–1–724. The collection agency that confines its collection to the amounts owed the licensed lender is exempt from all of these requirements.

I would therefore give effect to both the $30 bad check charge limitation of the Deferred Deposit Loan Act and to the exemption for collection agencies by limiting the exemption to agencies that collect or attempt to collect only the amounts due the deferred loan lender. The contrary interpretation adopted here today produces, in my view, a result that is both unduly harsh and inconsistent with the benevolent purposes of the Act. I accordingly dissent.